# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### EASTERN DIVISION

| | |
|---|---|
| KRISTIE LYNN STUDDARD, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | ) |
| | )  Case No.:  1:22-cv-00933-JHE |
| COMMISSIONER OF SOCIAL | ) |
| SECURITY, | ) |
| | ) |
|     Defendant. | ) |

## MEMORANDUM OPINION[1]

Plaintiff Kristie Lynn Studdard ("Studdard") seeks review, pursuant to 42 U.S.C. § 405(g), § 205(g) of the Social Security Act, of a final decision of the Commissioner of the Social Security Administration ("Commissioner"), denying her application for supplemental security income ("SSI").  Studdard timely pursued and exhausted her administrative remedies. This case is therefore ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3). The undersigned has carefully considered the record and, for the reasons stated below, the Commissioner's decision is **REVERSED**, and this action is **REMANDED** for further proceedings.

### I. Factual and Procedural History

On April 18, 2016, Studdard protectively filed an application for SSI, alleging disability beginning on that date.  (Tr. 159–71, 192).  The Commissioner initially denied Studdard's application on May 31, 2016.  (Tr. 103–08).  An administrative law judge ("ALJ") denied

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of final judgment.  (Doc. 11).

Studdard's claim again after she requested rehearing, and the Appeals Council affirmed. (Tr. 1–9, 16–32). Studdard appealed to this court, which reversed the Commissioner's decision and remanded the matter on July 24, 2020.[2] (Tr. 509–19). *See also Studdard v. Saul*, Case No. 4:19-cv-00619-CLM, 2020 WL 4260604, (N.D. Ala. 2020) ("*Studdard I*").

While her appeal was pending, Studdard filed a second application for SSI on April 18, 2019. (Tr. 757–62). An ALJ denied that claim on May 28, 2020. (Tr. 528–44). When this court remanded the first claim, the Appeals Council consolidated the two claims and remanded both to an ALJ for a new decision. (Tr. 520–25).

An ALJ held a hearing on both claims on August 24, 2021. (Tr. 480–504). On October 28, 2021, the ALJ denied the claims. (Tr. 460–79). Studdard again requested review of the ALJ's decision by the Appeals Council, but it denied her request on May 25, 2022. (Tr. 449–55). On that date, the ALJ's decision became the final decision of the Commissioner. (*Id.*). On July 25, 2022, Studdard initiated this action.

Studdard was 42 years old on the date she filed her application. (Tr. 472). Studdard has at least a high school education and no past relevant work. (Tr. 472).

## II. Standard of Review[3]

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this court is to determine whether the decision of the Commissioner is supported by

---

[2] Specifically, the court remanded due to the Appeals Council's failure to consider evidence submitted to it. *Studdard I*, 2020 WL 4260604 at *4–5.

[3] In general, the legal standards applied are the same whether a claimant seeks SSI disability insurance benefits ("DIB"). However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations for statutes or regulations found in quoted court decisions.

substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.*

This court must uphold factual findings that are supported by substantial evidence. However, it reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan,* 936 F.2d 1143, 1145–46 (11th Cir. 1991).

### III. Statutory and Regulatory Framework

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[4] The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505 (a). To establish entitlement to

---

[4] The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499.

disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520 (a)(4)(i-v). The Commissioner must determine in sequence:

(1)  whether the claimant is engaged in substantial gainful activity

(2)  whether the claimant has a severe impairment;

(3)  whether the claimant's impairment meets or equals an impairment listed by the SSA;

(4)  whether the claimant can perform his or her past work; and

(5)  whether the claimant is capable of performing any work in the national economy.

*Viverette v. Comm'r of Soc. Sec.*, 13 F.4th 1309, 1312 (11th Cir. 2021). If a claimant satisfies Steps One and Two, he or she is automatically found disabled if he or she suffers from a listed impairment.  *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999).  "Once a claimant proves that she can no longer perform her past relevant work, the burden shifts to the Commissioner to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform."  *Id.* (cleaned up).

### IV. Findings of the Administrative Law Judge

After consideration of the entire record and application of the sequential evaluation process, the ALJ made the following findings:

At Step One, the ALJ found that Studdard had not engaged in substantial gainful activity since April 18, 2016, her application date.  (Tr. 465).

At Step Two, the ALJ found that Studdard has the following severe impairments: degenerative disc disease of the lumbar spine, osteoarthritis, Sjogren's syndrome, endometriosis,

irritable bowel syndrome, panic disorder, anxiety disorder, depression, and chronic pain syndrome. (Tr. 465).

At Step Three, the ALJ found Studdard does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 466).

Before proceeding to Step Four, the ALJ determined Studdard's residual functioning capacity ("RFC"), which is the most a claimant can do despite her impairments. *See* 20 C.F.R. § 404.1545(a)(1). The ALJ determined that Studdard has the RFC

> to perform light work as defined in 20 CFR 416.967(b) except the claimant can occasionally stoop, kneel, crouch, crawl, and climb ramps and stairs, but never climb ladders, ropes, or scaffolds. The claimant requires reasonable access (i.e., on premises) to restroom facilities at the usual and customary breaks. The claimant should avoid concentrated exposure to extreme temperatures and exposure to hazards such as unprotected heights or hazardous machinery. The claimant can understand, remember, and carry out simple instructions and maintain attention for two-hour periods. The claimant can tolerate occasional interaction with the general public and frequent interaction with coworkers and supervisors. Changes in the workplace should occur no more than occasionally.

(Tr. 468).

At Step Four, the ALJ determined that Studdard had no past relevant work. (Tr. 472). At Step Five, the ALJ determined, considering Studdard's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Studdard could perform. (Tr. 472–73). Therefore, the ALJ determined that Studdard has not been under a disability since April 18, 2016, the date Studdard's application was filed, and denied her claim. (Tr. 473).

## V. Analysis

Although the court may only reverse a finding of the Commissioner if it is not supported by substantial evidence or because improper legal standards were applied, "[t]his does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)). The court, however, "abstains from reweighing the evidence or substituting its own judgment for that of the [Commissioner]." *Id.* (citation omitted).

Studdard raises two issues. First, she argues the ALJ inappropriately evaluated the opinions of treating physician Dr. Richard R. Cunningham. (Doc. 15 at 14–25). Second, she contends the ALJ inappropriately discounted her testimony regarding her subjective symptoms. (*Id.* at 25–28). Because the first of these grounds requires remand and implicates the ALJ's analysis of Studdard's testimony, the undersigned considers only that ground.

For claims filed before March 27, 2017, such as the first claim in this case, the weight accorded a doctor's opinion depends on the doctor's examining and treating relationship with the claimant, how consistent the opinion is with the record as a whole, the doctor's specialty, and other factors.[5] *See* 20 C.F.R. §§ 404.1527(c), 416.927(c). Generally, a treating doctor's opinion is

---

[5] For claims filed on or after March 27, 2017, an ALJ is not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s), including those from [the claimant's own] medical sources." 20 C.F.R. § 404.1520c(a). This regulatory change eliminated the "treating physician rule" discussed below. *Harner v. Soc. Sec. Admin., Comm'r*, 38 F.4th 892, 897 (11th Cir. 2022). Although one of the claims consolidated in this case was filed after March 27, 2017, the Social Security Administration's procedural rules dictate that the older regulations apply to the consolidated case. *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, HALLEX I-5-3-30(IV)(D). In any case, the Commissioner does not contest that the older framework applies. (*See, e.g.,* doc.

entitled to more weight, and an ALJ must give good reasons for discounting a treating doctor's opinion.  *See* 20 C.F.R. § 404.927(c)(2); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). "Good cause exists when (1) the treating physician's opinion was not bolstered by the evidence, (2) the evidence supported a contrary finding, or (3) the treating physician's opinion was conclusory or inconsistent with his or her own medical records." *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1259 (11th Cir. 2019).  *See also See* 20 C.F.R. § 416.927(c).  If the ALJ determines that the opinion does not deserve controlling weight, "the ALJ must clearly articulate his reasons, which must also be legally correct and supported by substantial evidence in the record."  *Smith v. Saul*, 413 F. Supp. 3d 1140, 1144–45 (N.D. Ala. 2019).

Studdard takes issue with how the ALJ handled two opinions by Dr. Cunningham, Studdard's pain management physician.  The first of these (the "First Cunningham Opinion") is a letter dated August 9, 2018.[6]  (Tr. 1042).  In it, Dr. Cunningham opined that Studdard's "functional status had decreased over the last two years due to her physical health."  (*Id.*).  Dr. Cunningham stated that Studdard "has had approximately 12 years of chronic low back pain that initially began with injury in 2006," resulting in "multiple epidurals without benefit."  (*Id.*).  Dr. Cunningham characterized Studdard's pain as "fairly well controlled with buprenorphine though she has ongoing chronic joint pain, which has been disabling."  (*Id.*).  Finally, Dr. Cunningham opined that Studdard's "functional status is poor and her ability to work is very poor," with "minimal rehab potential."  (*Id.*).

---

25 at 6 n.4).

[6] The Appeals Council's decision not to consider this letter in the *Studdard I* proceedings is what ultimately led to remand in that case.  *See Studdard I*, 2020 WL 4260604 at *4–5.

Dr. Cunningham's second opinion (the "Second Cunningham Opinion") consists of two forms: a Physical Capacities Form (tr. 1150) and a Mental Health Source Statement (tr. 1151), both dated December 6, 2019.  On the Physical Capacities Form, Dr. Cunningham filled out portions of the form indicating that Studdard: could sit upright in a standard chair for two hours at a time; could stand for 30 minutes at a time; would be expected to lie down, sleep, or sit with propped legs for one hour of an 8-hour daytime period; would be off-task for 75% of an 8-hour day; and would miss 15 days of work in a 30-day period due to physical symptoms.  (Tr. 1150). Dr. Cunningham indicated that these limitations existed back to April 18, 2016, and that he would expect them to last for 12 or more months.  (*Id.*).  Dr. Cunningham opined that these were caused by Studdard's chronic pain syndrome, spinal issues, fibromyalgia, osteoarthritis, Sjogren's syndrome, depression, and tension headaches, and that Studdard suffered fatigue as a side effect of her medication.  (*Id.*).  On the Mental Health Source Statement, Dr. Cunningham circled portions of the form indicating that Studdard could not perform activities within a schedule and be punctual and that she could not adjust to routine and infrequent work changes.  (Tr. 1151).  As with the Physical Capacities Form, Dr. Cunningham stated that Studdard would be off-task for 75% of an 8-hour day and opined that she would miss 15 days of work in a 30-day period due to her psychological symptoms.  (*Id.*).  Again, Dr. Cunningham indicated that these limitations had existed back to April 18, 2016, and that Studdard's medications caused fatigue.  (*Id.*).

The ALJ largely rejected Dr. Cunningham's opinions.  Specifically, she found:

> The undersigned has considered the multiple opinions by Dr. Cunningham, the claimant's pain management physician, and finds them to be of little weight, as they are inconsistent with his own treatment notes or his repeated notations that the claimant is the caregiver for her parents (Exhibits C14F, D3F, and D4F). Further, Dr. Cunningham noted that the claimant can only sit for two hours at one time and stand for thirty minutes at one time but must have her legs propped up for one hour in an eight-hour workday. He also noted the claimant would be off task

approximately seventy-five percent of the workday and would miss fifteen days of work in a thirty day period, but provided no evidence to support these limitations. Further, his treatment notes show that the claimant has been making jewelry, helping her parents, and caring for her aunt. These are all activities that the claimant minimized in her testimony but are consistently noted throughout his treatment notes.

(Tr. 472).

As a threshold issue, Studdard contends that the ALJ erred as a matter of law in evaluating the Cunningham opinions together.  (Doc. 15 at 14–16).  Studdard argues that "it is not clear that the ALJ articulated *any* basis for discounting the First Cunningham opinion, let along a good cause basis."  (*Id.* at 16).  The Commissioner acknowledges that the ALJ did not discuss the First Cunningham Opinion in detail.  (Doc. 25 at 10).  However, she contends that the First Cunningham Opinion is not a medical opinion at all because it concerns issues reserved for the Commissioner.  (*Id.* at 10–11).  Opinions on some issues, such as the claimant's RFC and whether the claimant is "disabled" or "unable to work," "are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability."  20 C.F.R. § 416.927(d).  *See also* Social Security Ruling ("SSR") 95–5p, 1996 WL 374193 (1996).  The First Cunningham Opinion does contain several quotations that fit this bill: Dr. Cunningham's statements that Studdard's "ability to work is very poor" and that Studdard's pain is "disabling."  (Tr. 1042).  However, as Studdard points out in her reply (doc. 26 at 3), the regulations concerning opinions reserved for the Commissioner do not invalidate the entire First Cunningham Opinion.

All that said, Studdard provides no authority for the proposition that an ALJ may not discuss multiple opinions together, so long as the ALJ provides good cause that would support the weight the ALJ assigned to them.  In the paragraph discussing Dr. Cunningham's opinions, the

ALJ cites three primary reasons for rejecting them: (1) they are "inconsistent with his own treatment notes or his repeated notations that the claimant is the caregiver for her parents" and aunt; (2) he "provided no evidence to support these limitations"; and (3) Dr. Cunningham's treatment notes show that Studdard "has been making jewelry." (Tr. 472). None of these is sufficient good cause to reject Dr. Cunningham's opinions.

First, the ALJ's apparent rationale for finding an inconsistency between Dr. Cunningham's treatment notes and his opinion does not hold water. The only specific inconsistency the ALJ cited was between the limitations in Dr. Cunningham's opinion and his references to Studdard's role caring for her parents and aunt. It is true that, on multiple occasions, Dr. Cunningham noted that Studdard has cared for her parents and aunt,[7] and the Commissioner cites multiple portions of the record containing these notations. (Doc. 25 at 9–10) (citing tr. 424, 428, 472, 1018–19, 1028, 1031–32, 1042, 1049, 1128, 1150–51, 1154, 1160, 1163, 1166, 1170, 1174, 1178, 1184, 1188, 1192, 1196, 1200, 1204, 1208–09, 1213, 1217, 1221, 1224–25, 1228, 1233, 1236–37, 1240, 1245–46, 1249–50, 1254, 1258, 1261, 1262, 1269, 1315–18, 1320–22, 1324–256, 1327, 1329, 1332–33, 1336, 1338, 1342, 1474, 1479–80, 1492, 1498, 1508, 1514). It is unclear when Studdard began caring for her aunt and parents, but Dr. Cunningham's earliest notation referencing this appears to be August 8, 2017. (Tr. 1154). In this note, Dr. Cunningham indicated that Studdard's aunt, Karen Motes, was "now at home with terminal heart valve dz" and that Studdard's mother, who was experiencing rheumatoid arthritis and pulmonary disease, required daily visits to Birmingham to

---

[7] Studdard's parents are her mother and stepfather, whom Dr. Cunningham described as "the only father [Studdard] has known." (Tr. 1018). Dr. Cunningham's notes also reflect that Studdard described caring for her grandchildren (*see, e.g.,* tr. 1225), but the ALJ did not cite this as a basis for rejecting Dr. Cunningham's opinion and the Commissioner does not discuss it either.

see an ophthalmologist.  (*Id.*).  In a subsequent visit on October 3, 2017, Studdard indicated she was "very busy running errands and caring for her aunt," who was under hospice care and failing slowly.  (Tr. 1160).  At the next visit, on November 28, 2017, Dr. Cunningham's notes show that Studdard's aunt's "husband also helps with [the aunt's] care."  (Tr. 1163).  The first mention of caring for Studdard's mother occurred at the next visit, on December 28, 2017.  (Tr. 1170).  There, Dr. Cunningham's notes show that Studdard was "[b]usy daily out of the house" and "[b]usy with care giving for aunt and mother."  (*Id.*).  At a May 15, 2018 visit, Dr. Cunningham's notes reflect that Studdard was "very involved with the care of her ill Aunt Karen" and that Studdard's aunt's husband was "a very poor caregiver."  (Tr. 1192).  On August 9, 2018, Dr. Cunningham's notes explain that Studdard's "parents both have dementia and are an issue."  (Tr. 1204).  On November 2, 2018, Dr. Cunningham again noted that Studdard was caring for her parents, observing that she had "a good heart but a full plate."  (Tr. 1217).  By this visit, Studdard's aunt was described as "[u]nder care of HHC" (i.e., home health care).  (*Id.*).  On September 20, 2019, Dr. Cunningham noted that Studdard's mother had to be hospitalized and that Studdard "has had to move in with them [sic] to care for them."  (Tr. 1261).  Dr. Cunningham described Studdard as "staying with [her parents] full time" due to their worsening health and memory issues on November 25, 2019. (Tr. 1479).  Dr. Cunningham provided counseling to Studdard at this visit regarding "need to recruit help caring for her parents."  (Tr. 1482).  By October 12, 2020, Studdard had "a younger gal helping her at the house."  (Tr. 1048).  Studdard eventually "had to let the younger girl who was helping at the house go due to several issues," but "hired a new gal who has been very productive and is trustworthy."  (Tr. 1128).[8]

---

[8] The undersigned has omitted from the discussion above some notes that are duplicative

The problem for the Commissioner is that *none* of these citations explain what Studdard was doing to care for her parents and aunt. While the notes indicate that Studdard had some role, they shed no light on what Studdard's specific tasks were, what exertional requirements those tasks entailed, or anything else that could purportedly be inconsistent with the restrictions that Dr. Cunningham's opinions lay out. The ALJ appeared to simply take for granted that any level of care amounts to such an inconsistency, but this falls short of her obligation to ensure that any purported inconsistency is *genuinely* inconsistent with the limitations at issue. *See Simon v. Comm'r, Soc. Sec. Admin.*, 7 F.4th 1094, 1107 (11th Cir. 2021) (finding an ALJ's rejection of a treating physician's opinion inadequate where the court "cannot discern—and the ALJ did not attempt to explain—how any of [the cited evidence was] . . . genuinely inconsistent with [the treating physician's] opinions."). In any case, the only evidence in the record that supports Studdard's caregiving role is her testimony at the hearing before the ALJ. The ALJ undertook a limited inquiry into Studdard's care for her parents. Specifically, the ALJ asked Studdard if she was "responsible for their care." (Tr. 492). Studdard testified that she was not, and that a sitter took care of her parents. (*Id.*). The ALJ also inquired about the notations indicating that Studdard moved in with her parents to take care of them; Studdard indicated that she "did move in to watch them and make sure my mom did not burn the house down," and that she had gotten a sitter when

―――――――――――――――――

or simply do not indicate anything new about Studdard's care role. Dr. Cunningham's notes often simply repeat the exact phrasing from previous visits. For example, the phrase "she has a good heart but a full plate" appears in every note following its first appearance on November 2, 2018. (*See, e.g.,* tr. 1217, 1221, 1225, 1228, 1233, 1237, 1246, 1250, 1254). Because of this, it is unclear the degree to which subsequent notes reference a continuing situation rather than historical events. This leads to some situations where Dr. Cunningham's notes offer a present event that contradicts historical notes from a prior event, such as his notation that Studdard's father stopped driving after an accident immediately preceding a historical notation (present from earlier encounters (*see* tr. 1514)) that Studdard's father "still drives ??? and should not be." (Tr. 1018).

their health declined.  (Tr. 495–96).  Studdard testified that her role in caring for her parents prior

to the sitter was giving them "pill packs" put together by the pharmacy and "making sure mama

doesn't burn the house down."  (Tr. 496).  Studdard further testified that her parents were able to

"bathe themselves and so forth," that her mother cooked until "last fall," that a cleaner cleaned the

house, and that she did not have to do anything to care for her stepfather.  (Tr. 497).  The ALJ did

not ask any questions about Studdard's role in caring for her aunt.  The ALJ characterized

Studdard's testimony as "minimiz[ing]" her caregiving activities (tr. 472), but none of this

testimony is otherwise contradicted by record evidence indicating Studdard did *more* to care for

them.  And none of this testimony is obviously inconsistent with Dr. Cunningham's notes, either.

The ALJ simply had no basis in the record for finding Dr. Cunningham's notations regarding

caregiving contradicted his opinions.

        As for the second reason the ALJ cited, it is entirely unclear what the ALJ meant by her

statement that Dr. Cunningham provided "no evidence" concerning his opinions.  The record

contains hundreds of pages of Dr. Cunningham's office treatment notes.  (Tr. 346–430, 1043–56,

1101–39, 1152–1378, 1472–1516).  "Treating-physician opinions should not be considered in a

vacuum, and instead, [a doctor's] earlier reports should be considered as the bases for [his]

statements."  *Schink*, 935 F.3d at 1262 (cleaned up).   The ALJ should have considered Dr.

Cunningham's treatment notes in concert with his opinions.  If she found them unsupported by

those notes, she should have explained why.[9]  As it stands, this type of conclusory statement is not

        _____

        [9] The Commissioner contends the ALJ "explained that Dr. Cunningham outlined no
medical findings supporting his opinions."  (Doc. 25 at 11).  This is a paraphrase that inserts "no
medical findings" in place of "no evidence."  To support it, the Commissioner points to Dr.
Cunningham's "objective physical examinations of" Studdard, which resulted in "generally
unremarkable findings excepting a mild limp."  (Doc. 25 at 10) (citing Tr. 429, 1028, 1032, 1124,

adequate good cause to discount a treating physician's opinion.  *See Borden v. Astrue*, 494 F. Supp. 2d 1278, 1282–83 (N.D. Ala. 2007).

Finally, Studdard's jewelry-making activities do not provide good cause to discount Dr. Cunningham's opinion either.[10]  Like Studdard's care for her parents and aunt, Dr. Cunningham's notes mention jewelry-making in only the broadest of terms.  For instance, Dr. Cunningham stated on March 20, 2017, that Studdard was "[m]aking jewelry and marketing on FB, craft shows, and soon a website."  (Tr. 395).  Dr. Cunningham repeated this notation for the next several months. (Tr. 397, 399, 401, 403, 405).  In December 2018, Dr. Cunningham noted that Studdard "[h]as started her own small boutique clothing/jewelry business in Sylacauga" (tr. 1224), which he likewise repeated for several months, also sometimes indicating that Studdard was "busy with her new shop and business" (tr. 1232, 1236, 1240, 1245, 1249).  On July 8, 2019, Dr. Cunningham noted that Studdard's jewelry business "was lost to a recent small tornado."  (Tr. 1253).  There are no further notations concerning the business.  Nor are there any indications of what the business

---

1129, 1133, 1137, 1139, 1155, 1157, 1164, 1167, 1270, 1340, 1342, 1475, 1481, 1493).  Nothing in the ALJ's opinion indicates she relied on any of these in concluding that Dr. Cunningham "provided no evidence" to support his opinion.  The court "cannot affirm based on a post hoc rationale that 'might have supported the ALJ's conclusion,'" *Watkins v. Comm'r of Soc. Sec.*, 457 F. App'x 868, 872 (11th Cir. 2012) (*citing Owens v. Heckler,* 748 F.2d 1511, 1516 (11th Cir. 1984)), such as the one the Commissioner advances here.  *See also Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011).

[10] Studdard suggests that the ALJ should have analyzed Studdard's jewelry-making as an "attempted work activity."  (Doc. 15 at 23–24) (citing 20 C.F.R. § 416.975).  The regulation she cites concerns whether self-employment constitutes substantial gainful activity.  It does not appear to have any application here given that the ALJ concluded that Studdard had not engaged in substantial gainful activity.  In any case, Studdard's objection is mostly that there is no evidence to support what she *did*.  (*See* doc. 26 at 9) ("Kristie objects that the ALJ, by not examining the nature of her attempt at a jewelry business – including its physical and mental demands . . . .").  As stated below, the undersigned will require the ALJ to explore this if the ALJ intends to use it to discredit Dr. Cunningham's opinion or Studdard's testimony of subjective symptoms.

14

entailed.  Studdard testified at the hearing: "I made a few bracelets here and there, and I couldn't -- my hands wouldn't let me do it a lot, and I ain't able to do nothing."  (Tr. 497).  The ALJ again considered this to be "minimizing" the activity (tr. 472), but she does not explain how any of this is inconsistent with the limitations contained in Dr. Cunningham's opinions.  Nor does the Commissioner.  (*See* doc. 25 at 9, 16).  There appears to be no way the ALJ could have determined from the record that it could be.

On remand, the ALJ should provide a more thorough evaluation of Dr. Cunningham's opinion.  If the ALJ rejects Dr. Cunningham's opinion, the ALJ must articulate good cause to do so, clearly explaining the rationale for doing so.  To the extent that the ALJ cites inconsistencies with or lack of support in the record, the ALJ must describe these inconsistencies or lack of support with sufficient clarity that a reviewing court can determine the evidence that she relies upon.  To the extent that the ALJ determines that Studdard's care for her aunt and parents or jewelry-making are consistent with the ability to work, the ALJ must do so based on evidence of what those activities actually entailed.  To the extent necessary, the ALJ should also reevaluate Studdard's subjective testimony based on this evidence.[11]

## VI. Conclusion

For the reasons set forth herein, and upon careful consideration of the administrative record and memoranda of the parties, the decision of the Commissioner of Social Security denying

---

[11] For instance, the ALJ rejected Studdard's testimony based on her conclusion that Studdard "spends much of her time taking care of her elderly and sick parents as she is the only child close enough to do these activities."  (Tr. 471).  To support this, the ALJ cited Dr. Cunningham's treatment notes and an email from Studdard's sister indicating that Studdard's mother "cannot be left alone" (tr. 936).  (Tr. 471).  Like Dr. Cunningham's treatment notes, the email says nothing about the nature of the care Studdard provided to her parents or its relationship to the limitations Dr. Cunningham imposed.

Studdard's claim for SSI is **REVERSED**, and this action is **REMANDED** for further proceedings.

A separate order will be entered.

      DONE this 27th day of March, 2024.

_____
**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE